IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-952-D

LAQUINTES JONES, )
)
Plaintiff, )
)
v. ) **ORDER**
)
WELLS FARGO HOME )
MORTGAGE, INC., )
)
Defendant. )

On December 27, 2016, LaQuintes Jones ("Jones" or "plaintiff"), proceeding pro se and in forma pauperis, filed a complaint against Wells Fargo Home Mortgage, Inc. ("Wells Fargo" or "defendant") alleging discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112 et seq. ("ADA"), and retaliation in violation of the Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"), based on her termination on June 5, 2015. See [D.E. 1]; [D.E. 32-2] 7. On April 23, 2018, Wells Fargo moved for summary judgment [D.E. 32] and filed a statement of material facts [D.E. 33]. On May 17, 2018, Jones moved to deny Wells Fargo's motion for summary judgment [D.E. 35], filed a memorandum in opposition to Wells Fargo's motion for summary judgment [D.E. 36], and filed a statement of material facts [D.E. 37].[1] On May 31, 2018, Wells Fargo responded to Jones's motion to deny Wells Fargo's motion for summary judgment [D.E. 39]. On June 12, 2018, Jones replied [D.E. 40]. As explained below, the court grants Wells Fargo's motion for summary judgment and denies Jones's motion.

---

[1] The court construes Jones's motion to deny Wells Fargo's motion for summary judgment as a response to Wells Fargo's motion.

I.

On November 9, 2010, Wells Fargo hired Jones as a Mortgage Loan Document Specialist. See [D.E. 33] ¶ 6; [D.E. 32-2] 10. Over the next two years, Wells Fargo promoted Jones several times. See [D.E. 33] ¶ 7; [D.E. 32-2] 11–12. In October 2012, Jones applied for the position of Quality Assurance Analyst I. See [D.E. 33] ¶ 8. Based on Jones's work record at Wells Fargo, see [D.E. 32-2] 12; [D.E. 38-1] 2–3, Wells Fargo promoted Jones to the Quality Assurance Analyst I position. See [D.E. 33] ¶ 8.

As a Quality Assurance Analyst I, Jones was responsible for the initial review of loans in bankruptcy processes. See id. ¶¶ 9–10. After the initial review, Quality Assurance Analyst IIs and IIIs perform two subsequent rounds of review. See id. ¶¶ 11, 15. Wells Fargo collects data concerning the analysts' performance, including error rate and rate of loan review, for use in annual, mid-year, and monthly performance reviews. See id. ¶¶ 11, 16. Wells Fargo scores its analysts on a scale from 1 to 5, with 2 corresponding to "needs improvement" and 3 corresponding to "meets expectations." See id. ¶ 13. Quality Assurance Analyst Is are expected to review at least 30 loans per day with an error rate between 1% and 2.49% to score a 3. See id. ¶¶ 12–13.

Tyler Long ("Long"), a Quality Assurance Analyst II, and Darcy Bell ("Bell"), a Quality Assurance Analyst III, reviewed Jones's work. See id. ¶ 15. While both were tasked with reviewing Jones's work, Long and Bell lacked the authority to terminate Jones or otherwise make personnel decisions. See [D.E. 32-4] ¶ 6; [D.E. 32-5] ¶ 12. Kevin Traynor ("Traynor") was Jones's supervisor between mid-2013 and November 2013, and Traynor's supervisor was Pamela Gross ("Gross"). See [D.E. 33] ¶ 15; [D.E. 38-1] 4; [D.E. 32-3] ¶ 13. Traynor's responsibilities included reviewing Jones's performance and providing feedback to ensure that she was meeting Wells Fargo's expectations. Soon after becoming Jones's supervisor, Traynor noted that "Ms. Jones

2

struggled to meet quality and production goals and had issues with time management." [D.E. 32-3] ¶ 15. Despite Jones's success in her prior positions, Jones struggled in her new role as a Quality Assurance Analyst I. See [D.E. 33] ¶ 46; [D.E. 32-5] ¶ 6 ("Ms. Jones was by far the worst performing Quality Assurance Analyst I in [the] department, and had the highest error rating and lowest productivity scores compared to her peers.").

In January and February 2014, Jones "failed to meet her production deadline and failed to revise errors when requested during second level review." [D.E. 33] ¶ 17. On February 20, 2014, Jones had her annual review with Traynor. See id. ¶ 18. Jones received a 3 ("meets expectations"), and Traynor noted that Jones's error rate exceeded 1% during 10 of the 12 months and that Jones "needed to exhibit more consistency in her work to receive a 4 or 5 rating." Id. Jones's productivity, however, did not improve following her annual review. For example, on February 25, 2014, Traynor noticed that Jones was surfing the internet instead of completing work. See [D.E. 32-3] ¶ 16. On the same day, Traynor noticed that Jones left her desk for an extended period of time. See id. When Traynor confronted Jones about not working, Jones said that she was "emotional due to the death of her pet." Id. ¶ 17.

In April 2014, Jones reviewed an average of 25 loans per day. See [D.E. 33] ¶ 19; [D.E. 32-2] 18. Jones claims that she reviewed fewer loans than expected because Wells Fargo assigned her fewer loans during that time. See [D.E. 32-2] 18–19. In June and July 2014, Jones reviewed an average of 27 and 23 loans per day, respectively. See [D.E. 33] ¶ 21; [D.E. 32-2] 19. Because Jones reviewed so few loans each day, Jones frequently rushed through loans at the end of the month to meet her deadlines, resulting in increased errors in her reviews. See [D.E. 33] ¶ 23.

On August 22, 2014, Jones alleges that she had a medical emergency and that an ambulance had to take her to the emergency room. See [D.E. 38-1] ¶ 10. On August 24, 2014, Jones alleges

3

that she was admitted to the hospital and diagnosed with "Psychosis Nos (Psychosis Unspecified) and V code." Id. Jones alleges that Wells Fargo knew of Jones's medical condition and disability on August 25, 2014. See id. ¶ 11. On August 27, 2014, Wells Fargo initiated review of Jones's request for medical leave and short-term disability. See id. ¶ 12; [D.E. 38-3] 2, 10. On September 15, 2014, Wells Fargo approved Jones for medical leave and short-term disability lasting from August 22, 2014, until October 5, 2014. See [D.E. 38-3] 20. Traynor knew that Jones was taking medical leave but did not know why. See [D.E. 32-3] ¶¶ 49–50. Jones never told her supervisors why she had taken medical leave. See [D.E. 32-2] 20–21, 25.

On October 5, 2014, Jones returned to work. Jones alleges that upon her return, her coworkers, including Traynor, began harassing her. See [D.E. 38-1] ¶ 18. In support, Jones claims that, when she returned, her work station had a sign saying "Welcome Back!" that Jones found "discriminatory," "degrading," and "offensive." See id.; cf. [D.E. 38-3] 457–58. Additionally, Jones alleges that Traynor was more critical of her performance than her non-disabled coworkers. See [D.E. 38-1] ¶¶ 27, 29.

Wells Fargo alleges that Jones's poor performance persisted after she returned to work, forcing Jones's supervisors to address her poor performance proactively with additional feedback and coaching. See, e.g., [D.E. 33] ¶¶ 22–23. For example, on January 13, 2015, Gross met with Jones to attempt to improve Jones's error rate and productivity. See id. ¶ 24. Gross directed Jones to work on one loan at a time and to save her progress after completing each loan so that the next round of review could begin promptly. See id. Jones ignored the directions, and in her end-of-month review, Traynor noted that Jones had missed a deadline and had numerous errors in her work. See id. ¶ 25. Gross again met with Jones in February 2015, and Jones similarly ignored Gross's directions, resulting in substantially the same results as in January 2015. See id. ¶¶ 26–28.

4

On March 2, 2015, Traynor and Gross gave Jones two written warnings for performance. See id. ¶¶ 29–31. Traynor and Gross notified Jones that failure to improve could result in additional corrective action, including termination. See id. ¶ 32. Around this time, Jones began complaining to HR about Traynor, claiming that his attempts to provide feedback or review her performance constituted harassment and retaliation. See [D.E. 38-1] ¶¶ 38–46.

On March 10, 2015, Wells Fargo approved Jones's request for intermittent absences under the FMLA. See [D.E. 33] ¶ 69. Jones could take two days off per month. See id. Traynor and Gross knew of Jones's FMLA request and that Wells Fargo approved it. See id. ¶ 70. On April 9, 2015, Wells Fargo granted Jones's request to amend her leave schedule to include two full or partial absences per month effective February 17, 2015, until February 17, 2016. See id. ¶ 72.

"Jones admits that she was not denied time off for any medical appointments." Id. ¶ 73; see [D.E. 32-2] 51. Jones was, however, issued an informal warning based on attendance on April 6, 2015. See [D.E. 38-3] 316. The warning describes the following dates of Jones's absences:

January 29, 2015 (partial, unplanned PTO)

February 3, 2015 (car in repair shop)

February 25, 2015 (weather, but building open entire day and [Jones] made no attempt to come in)

March 20, 2015 (emergency)

March 23, 2015 (extended lunch for attorney visit)[2]

March 30, 2015 (claimed FMLA, but advised by HR advisors not an FMLA protected event)

See id.

---

[2] The attorney visit concerned a custody dispute.

5

Jones's performance did not improve following the warnings. In Jones's March 2015 monthly review, Long noted that "there has been very little improvement in Jones's performance outside of the fact that she does a few more loans per day now." [D.E. 33] ¶ 33 (alterations omitted); Ex. 1 [D.E. 32-4] 7. Jones disputes that her performance did not improve. See [D.E. 38-1] ¶ 49. On April 23, 2015, Gross and Traynor gave Jones a formal warning for her performance. See [D.E. 33] ¶ 34. Gross and Traynor set a performance requirement for Jones—less than 2.5% error rate, and 4 loans per hour or 30 loans per day—and notified Jones that failure to meet the requirement could lead to further corrective action including termination. See id. ¶¶ 35–36.

At the end of April, Jones had not met her performance goals. In order to disguise this fact, Jones asked a Wells Fargo employee to change the date on three of her loans to make it appear that she reviewed them on April 30 instead of May 1. See [D.E. 33] ¶ 38. This attempted data manipulation violated Wells Fargo company policy. Jones told Traynor that she completed the loans on April 30. See id. ¶ 39. Following an internal investigation, Jones admitted that she completed the loans on May 1 and that she had lied to Traynor. See id. ¶ 40. Moreover, Jones's performance worsened during May 2015. See id. ¶ 41 ("As stated in [her monthly] review, Jones made 117 errors on one test and 78 errors on another, both of which were an increase from the previous month."). On May 28, 2015, Wells Fargo placed Jones on a paid leave of absence based on her performance issues and her violation of company policy. See id. ¶ 43. On June 4, 2015, Gross and Traynor decided to terminate Jones's employment. See id. ¶ 44. On June 5, 2015, Wells Fargo terminated Jones's employment based on her poor performance and attempted data manipulation in violation of company policy. See id. ¶ 46.

On June 15, 2015, Jones filed a complaint with the EEOC alleging discrimination based on disability in violation of the ADA and the FMLA. See [D.E. 6] 5–6; [D.E. 32-8]. On September

29, 2016, the EEOC issued a notice of right to sue. See [D.E. 6] 6.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252.; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

7

III.

A.

Jones alleges that Wells Fargo discriminated against her based on her Psychosis Unspecified condition in violation of the ADA. Jones lacks direct evidence of such disparate treatment; therefore, she relies on the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Raytheon Co. v. Hernandez, 540 U.S. 44, 49 & n.3 (2003). To establish a prima facie case for Jones's ADA claim, Jones must produce evidence sufficient to demonstrate that (1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of disability discrimination. See Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012); Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Rhoads v. Fed. Deposit Ins. Co., 257 F.3d 373, 387 n.11 (4th Cir. 2001); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 334 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); Rocha v. Coastal Carolina Neuropsychiatric Crisis Servs., P.A., 979 F. Supp. 2d 670, 677 (E.D.N.C. 2013). If Jones succeeds in proving her prima facie case, the burden shifts to Wells Fargo to articulate a legitimate, nondiscriminatory reason for Jones's discharge. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–09 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013). If Wells Fargo meets its burden of production by articulating a legitimate, nondiscriminatory reason for Jones's discharge, Jones must prove that Wells Fargo's reason was a mere pretext for disability discrimination. See, e.g., Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 143 (2000); Burdine, 450 U.S. at 252–56; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006); Hill, 354 F.3d at 285; King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003); Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992).

An employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that" the alleged illegal discrimination did not occur. Reeves, 530 U.S. at 148. Moreover, a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate, nondiscriminatory reasons for a discharge. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999); Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989); Iskander v. Dep't of the Navy, 116 F. Supp. 3d 669, 678–79 (E.D.N.C. 2015), aff'd, 625 F. App'x. 211 (4th Cir. 2015) (per curiam) (unpublished). An employer lawfully can rely on poor performance in taking adverse employment action. See Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004); Hawkins v. PepsiCo., Inc., 203 F.3d 274, 280 (4th Cir. 2000); Howard, 262 F. Supp. 3d at 332–33; Iskander, 116 F. Supp. 3d at 678–79; Fisher v. Asheville-Buncombe Tech. Cmty. Coll., 857 F. Supp. 465, 469–70 (W.D.N.C. 1993), aff'd, 25 F.3d 1039 (4th Cir. 1994) (per curiam) (unpublished table decision).

As for Jones's ADA discrimination claim, the court assumes without deciding that Jones has established the first two elements of her prima facie case. Even viewing the evidence in the light most favorable to Jones, however, no rational jury could find that Jones was meeting Wells Fargo's legitimate expectations at the time of discharge. Wells Fargo has produced substantial

9

evidence that, for nearly eighteen months, Jones struggled in her role as a Quality Assurance Analyst I.

In opposition, Jones contends that her performance was acceptable. See, e.g., [D.E. 38-1] ¶ 29. In considering whether an employee was meeting her employer's legitimate expectations, "it is the perception of the [employer] which is relevant, not the self-assessment of the plaintiff." Hawkins, 203 F.3d at 280 (alteration omitted) (quotation omitted); see King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). Thus, Jones's own opinion about her job performance does not create a genuine issue of material fact concerning whether she was meeting her employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067; McDougal-Wilson, 427 F. Supp. 2d at 611; Smith v. Martin, No. 5:10-CV-248-D, 2011 WL 3703255, at *5 (E.D.N.C. Aug. 23, 2011) (unpublished); O'Daniel v. United Hospice, No. 4:09-CV-72-D, 2010 WL 3835024, at *4 (E.D.N.C. Sept. 29, 2010) (unpublished); Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130-D, 2009 WL 890470, at *9 (E.D.N.C. Mar. 31, 2009) (unpublished), aff'd, 405 F. App'x 703 (4th Cir. 2010) (per curiam) (unpublished). Moreover, viewing the evidence in the light most favorable to Jones, no rational jury could find that the circumstances surrounding Jones's termination raise a reasonable inference that Wells Fargo discriminated against Jones based on her disability. Indeed, Jones claims that she never told her supervisors about her disability while she was employed. See [D.E. 32-2] 20–21, 25.

Alternatively, even if the court assumes that Jones established a prima facie case of disability discrimination, Wells Fargo had two legitimate, nondiscriminatory reasons for terminating Jones: poor performance and violating company policy. Jones's poor performance included consistent failure to meet deadlines, consistent failure to review enough loans each day with

acceptable accuracy, and consistent failure to accept feedback and coaching. Jones's violation of company policy occurred when she attempted to manipulate loan review data to hide her missed deadline in April 2015. As for pretext, even viewing the evidence in the light most favorable to Jones, no rational jury could find that Wells Fargo's explanation was a pretext for disability discrimination. Jones's speculations that others were held to different standards, without proof, does not create a genuine issue of material fact. Moreover, Jones's supervisors did not know that she had a disability because Jones never told anyone of her diagnosis or asked for accommodations. Therefore, the court grants Wells Fargo's motion for summary judgment on Jones's ADA disability discrimination claim. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 61–62 (4th Cir. 1995); Howard, 262 F. Supp. 3d at 335; Rocha, 979 F. Supp. 2d at 677.

B.

Construing Jones's complaint liberally, Jones alleges that Wells Fargo retaliated against her for making complaints about harassment, discrimination, and retaliation and for requesting medical leave. Wells Fargo contends that Jones's alleged protected conduct either does not relate to any protected status or activity or is not causally connected with her termination. See [D.E. 32] 19–20.

The ADA makes it unlawful to "discriminate against any individual because such individual ... made a charge ... under this chapter." 42 U.S.C. § 12203(a); see Reynolds, 701 F.3d at 154. To establish Jones's prima facie retaliation claim under the ADA, Jones must prove that "(1) [she] engaged in protected conduct, (2) [she] suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." Reynolds, 701 F.3d at 154; see Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); A Soc'y Without a Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011); Rhoads, 257 F.3d at 392; Haulbrook, 252 F.3d at 706; Williams v. Brunswick Cty. Bd. of Educ., 725 F. Supp. 2d 538, 548 (E.D.N.C. 2010). If Jones establishes a

11

prima facie case, Wells Fargo must articulate a legitimate, non-retaliatory reason for her termination. If Wells Fargo meets this burden of production, Jones must show that Wells Fargo's reason was a pretext for retaliation.

As for Jones's requests for medical leave, Jones requested medical leave in August 2014 and March 2015, and Wells Fargo granted Jones's requests without issue. Even assuming that Jones can establish the first two elements of her prima facie case, no rational jury could find that Wells Fargo terminated Jones on June 5, 2015, because of her requests for medical leave in August 2014 and March 2015. Jones received the medical leave that she requested. In addition, Jones's informal warning concerning attendance involved absences from work unrelated to Jones's medical leave. Moreover, Wells Fargo terminated Jones over three months after her second request for medical leave. A three-month lapse between Jones's request for medical leave and her termination is insufficient to establish causation for a retaliation claim. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (unpublished) (noting that "a three-month lapse is too long to establish causation"); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (a "lengthy time lapse" between protected activity and adverse employment action negates any inference of causation); see also Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (three-month time lapse insufficient); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (same); Jones v. Dole Food Co., 827 F. Supp. 2d 532, 554 (W.D.N.C. 2011) ("[C]omplaints of retaliation are considered stale after only a few months."); cf. King, 328 F.3d at 151 n.5 (a two-month time lapse between protected activity and adverse employment action "is sufficiently long so as to weaken significantly the inference of causation between the two events"). Alternatively, even if Jones established a prima facie case of retaliation, Wells Fargo had two legitimate, non-retaliatory

12

reasons for terminating Jones (i.e., Jones's poor performance and attempted data manipulation.). No rational jury could find that Wells Fargo's reasons were a pretext for unlawful retaliation.

As for Jones's complaints to HR, Jones complained to HR about retaliation, harassment, and discrimination on January 16, March 2, and April 23, 2015. See [D.E. 38-1] ¶¶ 38–40; [D.E. 33] ¶¶ 51–61. Even assuming that Jones established a prima facie case of retaliation, Wells Fargo had two legitimate, non-retaliatory reasons for terminating Jones (i.e., Jones's poor performance and attempted data manipulation). Moreover, no rational jury could find that Wells Fargo's legitimate, non-retaliatory reasons were a pretext for unlawful retaliation. Wells Fargo had documented extensive concerns about Jones's poor performance before Jones ever complained to HR about alleged retaliation, harassment, and discrimination. In addition, Jones had complained to HR before and experienced no adverse consequences. Accordingly, the court grants Wells Fargo's motion for summary judgment concerning Jones's ADA retaliation claim.

C.

Next, Jones alleges that Wells Fargo retaliated against her in violation of the FMLA. "The FMLA provides proscriptive rights that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 304 (4th Cir. 2016) (quotation omitted); see Dotson v. Pfizer, Inc., 558 F.3d 284, 294 (4th Cir. 2009). FMLA retaliation claims are evaluated under the McDonnell Douglas burden-shifting framework. See Vannoy, 827 F.3d at 304; Laing v. Fed. Express Corp., 703 F.3d 713, 717 (4th Cir. 2013); Yashenko v. Harrah's N.C. Casino Co., 446 F.3d 541, 550–51 (4th Cir. 2006); Norman v. Beasley Mezzanine Holdings, LLC, 826 F. Supp. 2d 875, 877 (E.D.N.C. 2011). To establish a prima facie case of retaliation in violation of the FMLA, Jones must prove that "(1) she engaged in a protected activity; (2) [Wells Fargo] took adverse action against her; and (3) a causal

13

nexus exists between the protected activity and the adverse action." Laing, 703 F.3d at 720; see Vannoy, 827 F.3d at 304; Yashenko, 446 F.3d at 551; Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). "The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Vannoy, 827 F.3d at 304–05.

As for Jones's prima facie case, Jones engaged in protected activity "by requesting FMLA coverage and by taking FMLA leave." Norman, 826 F. Supp. 2d at 878; see 29 C.F.R. § 825.220(c). Wells Fargo also took adverse action against Jones by terminating her employment. However, even viewing the evidence in the light most favorable to Jones, no rational jury could find that Jones's FMLA leave was causally connected with Jones's termination. A three-month lapse between Jones's request for medical leave and her termination is insufficient to establish causation for a retaliation claim. See, e.g., Breeden, 532 U.S. at 273–74; Perry, 489 F. App'x at 643; Dowe, 145 F.3d at 657; see also Drago, 453 F.3d at 1308; Richmond, 120 F.3d at 209; Jones, 827 F. Supp. 2d at 554.

Alternatively, even if Jones established a prima facie case, Wells Fargo had two legitimate, non-retaliatory reasons for terminating Jones (i.e., Jones's poor performance and attempted data manipulation). Cf. Vannoy, 827 F.3d at 304–05; Laing, 703 F.3d at 720–21. Jones has not shown that Wells Fargo's reasons were a pretext for unlawful discrimination. See Dockins, 176 F.3d at 749 ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate, non-[retaliatory] reasons for a discharge."). Even viewing the evidence in the light most favorable to Jones, no rational jury could find that Wells Fargo's reasons for terminating Jones were a pretext for unlawful retaliation. Therefore, the court grants Wells Fargo's motion for summary judgment concerning Jones's FMLA retaliation claim.

14

D.

Jones also raised objections about her deposition. See [D.E. 35] 5. Jones contends that her deposition should be suppressed because (1) the deposition lasted longer than seven hours in violation of Federal Rules of Civil Procedure 16(b) and 30(d)(1); (2) Wells Fargo did not close her deposition in violation of Federal Rule of Civil Procedure 30(b)(5)(C); and (3) Traynor's presence at her deposition violated Federal Rule of Civil Procedure 28(c). See id. The court rejects each argument.

First, Jones objects that her deposition lasted longer than seven hours in violation of Federal Rules of Civil Procedure 16(b) and 30(d)(1). See Fed. R. Civ. P. 16(b) (concerning scheduling orders); Fed. R. Civ. P. 30(d)(1). Jones alleges that the deposition lasted 8 hours and 50 minutes. See [D.E. 40] 10, 15–18. Wells Fargo responds that the deposition started at 10:11 A.M. and lasted until 5:50 P.M. with 71 minutes of breaks. See [D.E. 39] 2. Thus, the deposition took 6 hours and 28 minutes and comports with Rule 30(d). See id.

Under Rule 30(d), unless a court orders otherwise, depositions are limited to one day of seven hours. See Fed. R. Civ. P. 30(d)(1). The Committee Notes make clear that "[t]his limitation contemplates that there will be reasonable breaks during the day for lunch and other reasons, and that the only time to be counted is the time occupied by the actual deposition." Id. Advisory Committee's Note to 2000 Amendment. To the extent that Jones included time spent at lunch and on breaks in calculating the length of the deposition, her objection fails.

Jones also notes that the deposition transcript says that the deposition ended at 6:50 P.M. See [D.E. 32-2] 53. But see [D.E. 39] 2; [D.E. 39-1] ¶ 3; Ex. 1 [D.E. 39-1] 2. The court reporter stated that "the ending time of the depo[sition] was incorrectly stated as ending at 6:50 p.m. when in fact it ended at 5:50 p.m." Ex. 1 [D.E. 39-1] 2. The court considers the time stamp in the

15

deposition transcript a typo. Therefore, the court overrules Jones's objection concerning the length of her deposition.

Next, Jones contends that the deposition was not completed in violation of Federal Rule of Civil Procedure 30(b)(5)(C). See Fed. R. Civ. P. 30(b)(5)(C). Wells Fargo's counsel noted at the beginning of the deposition, however, that the deposition would be held open because Jones indicated that she may have discoverable documents that she had not produced. See [D.E. 32-2] 3 ("I'm going to say right now that I'm going to leave this deposition open at the end of the day in the event that there are any documents that we determine that I did not receive because I should have received all the documents in this case."). Therefore, the court overrules Jones's objection concerning Rule 30(b)(5)(C).

Finally, Jones contends that taking the deposition with Traynor present violates Federal Rule of Civil Procedure 28(c). See Fed. R. Civ. P 28(c). Under Rule 28(c), a deposition "must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action." Id.

Rule 28(c) concerns the court reporter and does not prohibit a party's employee from attending a deposition to observe the deposition. In any event, an objection under Rule 28(c) is waived if not made before the deposition begins or "promptly after the basis for disqualification becomes known or, with reasonable diligence, could have been known." Fed. R. Civ. P. 32(d)(2). Even if Traynor's presence violated Rule 28(c), Jones waived her objection by not raising it at the deposition. Therefore, the court overrules Jones's objection concerning Traynor's presence. Accordingly, the court denies Jones's motion [D.E. 35].

16

IV.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 32] and DENIES plaintiff's motion [D.E. 35]. The clerk shall close the case.

SO ORDERED. This _30_ day of November 2018.

*[signature]*
JAMES C. DEVER III
United States District Judge